AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

FILED 16 NOV '17 16:11 USDC-ORP

| | |
|---|---|
| United States of America<br>v.<br>JUAN CARLOS RAMON,<br>a/k/a Carlos Ramon, Juan Ramon, and<br>"@lexithetiger"<br><br>*Defendant(s)* | Case No. '17-MJ-188 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 28, 2017__ in the county of __Multnomah__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 2251(a) - Production of Child Pornography | On or about June 28, 2017, in the District of Oregon, defendant did knowingly use, persuade, induce, and entice a minor to engage in sexually explicit conduct as defined in 18 USC 2256, for the purpose of producing a visual depiction of such conduct or transmitting a live visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using a means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. |

This criminal complaint is based on these facts:

See attached affidavit, incorporated by reference herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James W. Humphrey, Jr., FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/16/17

_____
*Judge's signature*

City and state: Portland, Oregon

PAUL M. PAPAK, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

## INTRODUCTION

I, James W. Humphrey, Jr., having been first duly sworn, do hereby depose and state as follows:

1. I have been employed as a Deputy Sheriff for the Ouachita Parish Sheriff's Office in Monroe, Louisiana since August 2001. I am currently assigned to the Federal Bureau of Investigation, New Orleans, Louisiana Division, Monroe Resident Agency as a Task Force Officer, and have been since November 2013. I am also currently assigned to the Internet Crimes Against Children (ICAC) Task Force, and have been since November 2013. While assigned to the FBI and ICAC Task Force, I have investigated federal and state criminal violations, and assisted in federal and state investigations, related to high technology or cyber crime, child exploitation, and child pornography violations. I have gained experience through training provided by the Federal Bureau of Investigation and the Louisiana Attorney General's Office Internet Crimes Against Children Unit, along with everyday work relating to conducting these types of investigations. In my work with the FBI and the ICAC Task Force, I have observed and reviewed numerous examples of child pornography as defined in 18 U.S.C. § 2256, in all forms of media including computer media. Moreover, I am a Special Federal Officer/Special Deputy United States Marshal engaged in enforcing federal criminal laws, including 18 U.S.C. §§ 2251 and 2252A, and am authorized by the Attorney General to request a search warrant.

2. This affidavit is submitted in support of an arrest warrant and criminal complaint alleging that JUAN CARLOS RAMON, also known as CARLOS RAMON, JUAN RAMON, and "@lexithetiger" (hereafter "RAMON"), has violated Title 18, United States Code, Section 2251(a) (Production of Child Pornography). Because this affidavit is submitted for the limited purpose of

AFFIDAVIT OF JAMES W. HUMPHREY, JR.                                                   Page 1

establishing probable cause in support of the arrest warrant and complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that RAMON committed the offense alleged in the complaint.

3. The statements in this affidavit are based on my personal participation in this investigation, including my review of records and evidence obtained as part of this investigation; information that I have received from other law enforcement personnel and other persons with knowledge regarding the relevant facts; as well as my training and experience.

4. At points throughout this affidavit, I have interpreted the meaning of certain communications, such as common text abbreviations, e.g., "hru" to mean "how are you." These interpretations are based upon my experience and training, the context of the communications being interpreted, and all of the other evidence that I have gathered to this point in the investigation.

## RELEVANT STATUTE

5. Title 18, United States Code, Section 2251(a) prohibits a person from using, persuading, inducing, or enticing a minor to engage in any sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if: such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce; the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or such visual depiction has actually been transported or transmitted

using any means or facility in interstate or foreign commerce or in or affecting interstate or foreign commerce.

## SUMMARY OF THE INVESTIGATION

6. As set forth below, the FBI has been investigating an adult subject who, posing as an adolescent on the Internet website musical.ly using the account name "@lexithetiger", has solicited, and successfully induced, multiple minor-aged females to (a) generate visual depictions of themselves engaged in sexually explicit conduct, and (b) transmit those visual depictions to the subject over the internet. The subject has also transmitted images of minor-aged females engaged in sexually explicit conduct to minor females over musical.ly.

7. As discussed below, the investigation has identified RAMON as the individual who engaged in the foregoing offenses using the musical.ly account "@lexithetiger".

## BACKGROUND

### A. Internet Protocol Addresses

8. Internet Protocol ("IP") addresses facilitate transfer of data over the Internet. An IP address is unique to a particular subscriber during an online session. The IP address provides a unique locator, making it possible for data to be transferred between computers. Specifically, an IP address is a series of four numbers separated by periods, and each of the four numbers is a whole number between 0 and 255. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address.

9. A central authority provides each Internet Service Provider ("ISP") a limited block of IP addresses for use by that ISP's customers or subscribers. Many ISPs employ dynamic IP addressing; in other words, they allocate an unused IP address each time a customer or subscriber

accesses the Internet. The ISP logs the date, time, and duration of the Internet session for each IP address and can identify the user of that IP address for a particular session from these records. Typically, home users will be assigned an IP address for the duration of a session. In the case of dial-up modems, a user's IP address is released when the user's computer disconnects from the telephone service, and that IP address is available for others to use. In the case of cable modems or DSL service, an IP address is commonly held by a user for a longer period of time, from days to months, until the provider chooses to change it.

10.     ISPs typically retain records identifying the subscriber to whom a particular IP address was assigned, which allows investigators to identify the subscriber account to which data is sent, or from which data is received.

**B.     The Musical.ly Social Network Site**

11.     According to public source information and my investigation to date, I know that musical.ly is a social network site on the Internet. The developer of musical.ly is a company called Musical.ly, Inc. ("Musical.ly"), which has headquarters in Shanghai, China, and offices in San Francisco, California.

12.     Users can access musical.ly by downloading onto their computer (including a tablet or cellular phone) a free software application (commonly known as an "app"). Each user is required to provide a self-selected username and a means of identification, which can be a cellular telephone number.

13.     A musical.ly user has the ability to generate a video, generally lasting between 15 seconds and 1 minute, which the user can then share with others using the site. Users generating videos may select sound tracks to accompany the videos, use different speed options (time-lapse, slow, normal, fast, and epic) and add pre-set filters and effects. Users of the site can browse

content uploaded by other users of the site, regardless of whether they create their own videos.

14. Users of musical.ly have the ability to "follow" certain users of interest and will receive notice when a followed user is online at the same time. Users of the site also have the ability to communicate privately with each other through a written chat format. Users can also download another free app (called live.ly) that allows them to create a live video stream (*e.g.*, of themselves engaged in activity). The user presenting on live.ly can make their presentation generally available or restrict it to a limited number of people, including a single user. Users watching the presentation can, through a written chat format, communicate with the user who is streaming the live video presentation; in particular, any chat messages will appear on the screens of all users watching the user who is doing the live presentation. Written chats between users are recorded by musical.ly and retained by the site for a period of time.

## BACKGROUND OF THE INVESTIGATION

15. On June 30, 2017, the Ouachita Parish (Louisiana) Sheriff's Office responded to a residence in Monroe, Louisiana in reference to an investigation. The initial responding patrol deputy made contact with the complainant. The deputy learned that complainant's six year old daughter and eight year old niece had been victimized on the internet. According to the complainant, the crimes occurred on or about June 28, 2017 when both juvenile victims were on the internet application (APP) known as Musical.ly. The victims were communicating with an individual that they thought was a young white female using the screen name of @lexithetiger (hereafter "the suspect"). During communication with the unknown suspect, both juvenile victims were manipulated into sending nude images and videos of themselves.

16. On July 8, 2017, I obtained a state search warrant for Musical.ly in response to the information received above. The search warrant was presented to and signed by a Fourth

Judicial District Court Judge for Ouachita and Morehouse Parishes in Louisiana. Musical.ly complied with the search warrant and provided all requested information. The following is a brief description of what the records revealed with regards to the two juvenile victims referenced in paragraph 15 above:

a) The suspect started the conversation by thanking the victims for following "her."

b) The suspect claimed to be bored and wanting to play a game. The victims agreed to participate in the game.

c) The suspect then told the victims that the suspect would send a picture of "herself" and in return, the victims would have to send a picture of themselves doing the same thing.

d) An image of a young (juvenile) white female's face was sent to the victims from the suspect's account and in return the victims sent a face image.

e) The suspect then exchanged a clothed body image with the victims.

f) The suspect then sent an image showing what appears to be the same young white female in her underwear and the victims sent an image of a similar pose.

g) The suspect then asked the victims if they wanted to keep going and told them that the poses were going to get harder to do. The victims agreed to continue to participate.

h) The exchange of pictures continued with the suspect exchanging images of exposed buttocks, frontal nudity, and exposed vaginal images. Each time, the victims responded with similar pictures in return to the suspect.

i) The suspect then sent a video of an unknown individual masturbating with a yellow writing marker. In response to the video, one of the victims told the suspect that they couldn't do that and the suspect responded that "she can rub it" and stated, "For 30 seconds." When the victims told the suspect that they didn't have anything to use, the

suspect replied, "Her fingers," "She can use her fingers." The suspect stated, "U can record the video and she can do that."

j) The victims then sent an image of them digitally masturbating.

k) The suspect continued to demand more images of the victims. The suspect sent the minors a video of two females performing oral sex on each other and claimed that it was "she" and her cousin. The suspect demanded five pictures from each of the minors and instructed the victims to get into certain positions, including "Have her take a pic of u with nothing on and ur legs apart all the way" and "But I wanna see her tongue on ur parts and ur tongue on her parts."

l) The victims then sent the suspect an image of them performing oral sex on each other.

17. There were many more images exchanged between the victims and the suspect. These interactions concluded with the eight-year-old victim sending the suspect a video of herself masturbating. In reviewing the records from Musical.ly, it appears that there is a time zone and/or UTC time difference, as the records reflect the initial communication with the victims above occurred at approximately 2:01 in the morning on June 29, 2017, but the complainant stated it occurred on June 28, 2017 around 1:00 in the afternoon, and that it was not possible the communication occurred at 2:00 am on June 29. In addition, the records provided by Musical.ly revealed a second session with the eight-year-old victim after a gap in time, where the suspect asked the eight-year-old if her cousin was there and the victim replied "no." The records provided by Musical.ly reflect that this later communication occurred on June 30, 2017 at approximately eight minutes after midnight.

18. Investigators reviewed all of the other information, chat, image, and video logs provided by Musical.ly in reference to the @lexithetiger user account and determined that there were

AFFIDAVIT OF JAMES W. HUMPHREY, JR.                                                                 Page 7

many other juvenile victims that had sent nude images and videos to the suspect. The suspect followed a very similar pattern in his/her interaction with the other victims, asking if they wanted to play a game and then manipulating them into sending nude images and videos of themselves. In at least a couple screenshots of communications from the suspect to the victims, an image was circled and "Verizon" appeared at the top of the screen, indicating, from my training and experience, that at least those communications were sent using a smart phone.

19. In addition to the chat records and image/video exchanges, Musical.ly also provided investigators with Internet Protocol Addresses (IP Addresses) that the suspect was using during the criminal activities, and subscriber information. The subscriber information did not include a name or contact information other than an email address of lexithetiger@hotmail.co (not .com). The records reflect that the @lexithetiger account was created on June 24, 2017 with an "iPhone 8,2" while using IP Address 209.160.127.158. Investigators noted that during the criminal activity, the IP Addresses that were being used by the suspect would change multiple times. By researching the American Registry for Internet Numbers (ARIN), investigators learned that these IP Addresses were assigned to Paradise Networks LLC. Through research into Paradise Networks LLC., investigators learned that Paradise Networks LLC is, simply put, a server located in the United States that allows Switzerland based Golden Frog GmbH to conduct business domestically.

20. Golden Frog GmbH is a company that provides a paid service to anonymize their customers' identity while on the internet. With the assistance of the United States Department of Justice, Criminal Division, Office of International Affairs, an International Mutual Assistance Request in Criminal Matters was completed and served upon Golden Frog GmbH. Golden Frog GmbH complied with the request and supplied investigators with all requested information.

Golden Frog GmbH identified the customer as follows:

- JUAN CARLOS RAMON
- Customer ID number  - 607416
- Customer Email Address - **carloshasmail@gmail.com**
- Credit Card Number - 481583XXXXXX0193 (VISA)
- Credit Card Zip Code 97206.

21.     In addition, Golden Frog GmbH advised the services associated with the referenced IP Addresses started on June 3, 2017 @ 22:23:45 UTC using IP Address 76.115.129.102.  Golden Frog GmbH also provided a list of IP Addresses that was captured while suspect was using the service. The list consists of the date, time, client IP Address and assigned IP Address.  By comparing the date and time that the victims were victimized and the client IP Address that was signed into the Golden Frog GmbH service, investigators noted that IP Address 76.115.129.102 was the IP Address that was being used by the suspect.  Investigators researched the IP Address using ARIN and learned that Comcast Cable Communications is the Internet Service Provider (ISP) that maintains and services this IP Address.

22.     Investigators served Comcast Cable Communication with an administrative subpoena to obtain subscriber information.  Comcast Cable Communications complied with the subpoena and investigators learned that the customer who was assigned IP Address 76.115.129.102 on the dates and times that the criminal activity took place is CARLOS RAMON at 4303 SE 76th Avenue, Portland, OR 972063353.  The telephone number that is associated with the account is 626-616-2706 and the associated e-mail address is carloshasmail@comcast.net.

23.     On November 15, 2017, United States Magistrate Judge Youlee Y. You authorized warrants to search RAMON and the premises at 4303 SE 76th Avenue, Portland, Oregon and to

seize and examine various items that constitute evidence, instrumentalities, fruits and contraband related to various offenses involving the production, transportation, distribution, receipt and possession of child pornography, and the sending of visual depictions of a minor engaged in sexually explicit material, or what appeared to be the same, for the purpose of inducing a minor to participate in unlawful activity, in violation of 18 U.S.C. §§ 2251, and 2252A.

24. On November 16, 2017, other law enforcement officers and I executed the warrants. During the search, agents located a VISA credit card bearing number 481583XXXXXX0193 in RAMON's wallet, and photographed the same. Agents also seized, among other things, the following items of evidence:

    a. an Apple iMac desktop computer;

    b. a Samsung flash memory drive; and

    c. two iPhones.

25. RAMON was present when agents arrived to execute the warrants. During execution of the search warrant for RAMON's residence, FBI Task Force Officer Yonsoo Lee and I interviewed RAMON in a vehicle outside the residence. The interview was audio recorded and RAMON was advised of his Miranda rights prior to the interview. RAMON acknowledged that he understood his rights and was willing to talk to us. During the interview, RAMON provided the following information:

    a. RAMON acknowledged that we would find evidence relating to child pornography in his home;

    b. RAMON reported that digital images and videos of child pornography would primarily be found on a Samsung flashdrive, which he believed was located next to his computer in an upstairs room;

c. RAMON reported that he had used the iMac desktop computer located upstairs as well as his Apple iPhone to send, receive, and store child pornography.

d. RAMON reported first viewing child pornography when he was twelve years of age.

e. RAMON stated that for the past several years he had used a website called "Omegle" to contact and have video chats with various people online. He said more recently he has been using an "iPhone App" called musical.ly for this purpose. He said he would often ask females to send him pornographic images and videos of themselves, during these chats. He reported that many of the females were likely underage.

f. When asked if he had a preference when it came to age, he said he did not. When asked what age range would comprise the majority of pornographic images we would find on his digital devices, he reported "grade-school to middle-school-ish," and confirmed that meant girls who were 10-13 years old. RAMON said he is "sometimes sexually attracted" to girls in that age range. He explained that when girls that age sent him sexually explicit pictures and videos as he requested, he found them to be sexually arousing and masturbated when viewing them.

g. RAMON admitted using multiple screen names including "lexithetiger" when soliciting sexually explicit images and videos over the internet.

## CONCLUSION

26. Based on the foregoing information, I respectfully submit that there is probable cause to establish that JUAN CARLOS RAMON violated Title 18, United States Code, Section 2251, as charged in the attached Complaint.

27. This affidavit, the accompanying complaint, and the requested arrest warrant were reviewed by Assistant United States Attorney Jane Shoemaker prior to being submitted to the

AFFIDAVIT OF JAMES W. HUMPHREY, JR.                                          Page 11

Court. AUSA Shoemaker informed me that in her opinion the affidavit is legally and factually sufficient to establish probable cause to support issuance of the requested warrant and complaint.

JAMES W. HUMPHREY, JR.
Task Force Officer,
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this 16th day of November, 2017

PAUL M. PAPAK
United States Magistrate Judge