```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF OREGON

 3                        PORTLAND DIVISION

 4
   UNITED STATES OF AMERICA,      )
 5                                )
                       Plaintiff, ) Case No. 3:17-mj-00188
 6                                )
               v.                 )
 7                                ) November 21, 2017
   JUAN CARLOS RAMON,             )
 8                                )
                       Defendant. ) Portland, Oregon
 9 _____)

10

11

12

13                       DETENTION HEARING

14           TRANSCRIPT OF FTR-RECORDED PROCEEDINGS

15             BEFORE THE HONORABLE PAUL PAPAK

16       UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25
```

```
 1                         APPEARANCES

 2   FOR THE PLAINTIFF:
                         JANE H. SHOEMAKER
 3                       U.S. Attorney's Office
                         1000 SW Third Avenue
 4                       Suite 600
                         Portland, OR 97204
 5

 6   FOR THE DEFENDANT:
                         RICHARD LEE MCBREEN, III
 7                       Owens & McBreen, P.C.
                         319 SW Washington Street
 8                       Suite 614
                         Portland, OR 97204
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                TRANSCRIPT OF FTR-RECORDED PROCEEDINGS
 2                         (November 21, 2017)
 3   (In open court:)
 4            THE COURT:  Good afternoon, Ms. Shoemaker.
 5            MS. SHOEMAKER:  Good afternoon, Your Honor.  Calling
 6   Case 17-mj-00188.  United States v. Juan Carlos Ramon.  I'm
 7   Jane Shoemaker for the United States.  The defendant is
 8   present, in custody, and with his attorney, Richard McBreen.
 9        This matter is on for a detention hearing.
10            THE COURT:  We have arraignment already scheduled at
11   his appearance on a complaint, don't we?
12            MS. SHOEMAKER:  We do, Your Honor.  However, I was
13   going to notify the Court today, and I've told Mr. McBreen that
14   I now have to go out of town next week, so I'm going to
15   postpone grand jury for one additional week.  And so we'll need
16   to reschedule the arraignment date.
17            THE COURT:  Let's do that after we deal with the
18   issue before us which is a detention matter; right?
19            MS. SHOEMAKER:  Yes, Your Honor.
20            THE COURT:  Pretrial is recommending Mr. Ramon's
21   release on pretty extensive conditions.  I understand you
22   oppose that release.
23            MS. SHOEMAKER:  I'm very opposed to that, Your Honor.
24            THE COURT:  Do you want to be heard on that?
25            MS. SHOEMAKER:  Yes, I do.
```

1          THE COURT: Go ahead.

2          MS. SHOEMAKER: So, Your Honor, as the Court knows,
3  the defendant is charged in a complaint with production of
4  child pornography under Section 2251 of Title 18. As the Court
5  is aware, there is a rebuttable presumption that the defendant
6  is both a danger to the community and a risk of nonappearance
7  and that no conditions of release will reasonably assure the
8  safety of the community or his appearance at trial, and that is
9  under Section 3142(e)(3)(E).

10    The Court authorized the complaint in this case, so the
11 Court is familiar with the facts. But just to summarize
12 briefly, what that complaint showed is that this defendant over
13 the internet, using both his computer and his cell phone, was
14 contacting minors on different sites, including, most recently,
15 the site musical.ly -- that's musical.ly -- using various
16 screen names, including, in this case, lexithetiger, to contact
17 minor victims and entice them into producing images of child
18 pornography, images of children with their clothes off, images
19 of children engaging in sexual acts that he directed.

20    When the agents executed the search warrant at his
21 residence and seized a number of devices, the defendant
22 admitted to that conduct. He admitted doing this for several
23 years. He said originally he was using --

24          THE COURT: Was there admission beyond these
25 children?

1           MS. SHOEMAKER:  Yes, Your Honor.
2           THE COURT:  Are there others?  Have they been
3    identified?
4           MS. SHOEMAKER:  We have not identified the other
5    victims, but I can say that the law enforcement officers who
6    were reviewing the records received from musical.ly, just with
7    the screen name lexithetiger, that they were aware of at that
8    time, found multiple other victims who were minors, who were --
9    there was the same sort of pattern with lexithetiger
10   communicating, sending pictures.  Actually sending images and
11   videos of child pornography to the minor victims and telling
12   them to send pictures back of the same sort of activity.  And
13   the agent who swore to the complaint in this case estimated to
14   me that there were approximately 50 to 60 other minor victims
15   just with that screen name under the account musical.ly.
16          THE COURT:  Is there other screen names associated
17   with this beyond the one you found?
18          MS. SHOEMAKER:  The defendant -- I don't know
19   personally what the others are, but what I do know is the
20   defendant, at the time of the search warrant, he admitted to
21   the agents, during an interview, after being mirandized and
22   waiving his rights, he indicated that he had used other screen
23   names and that this was just one of them.  I believe he -- he
24   named at least one other name for them, but I don't recall
25   specifically what that was.

1         But he admitted to them that he had been doing this sort
2    of conduct for several years and that originally he did it on a
3    website called Omegle.  That's O-m-e-g-l-e.  He had been doing
4    that conduct over Omegle for several years and that he had
5    switched to musical.ly in the last six months.
6         And he indicated that he had -- he didn't have a
7    particular age preference but that the majority of the child
8    pornography that the agents would find on his devices would be
9    of grade school and middle school-aged children and confirmed
10   that that would be between the ages of 10 to 13.
11        As the Court knows from the facts in this complaint, the
12   two victims who were discussed in the complaint were only 6 and
13   8 years old.  I -- the case agent who has reviewed some of the
14   child pornography that was found on the defendant's computers
15   after they executed the search warrant indicated that there are
16   images of child pornography of children who are under age 10.
17        So -- and as I mentioned, the affiant of the complaint
18   said that he reviewed the images from the musical.ly account
19   under the screen name lexithetiger and saw images of
20   approximately, he estimated, 50 to 60 other minor victims with
21   the same pattern that's described in the complaint in this
22   case.
23             THE COURT:  Is there any evidence at this point in
24   the investigation, because it's ongoing, that the defendant
25   here had any contact with any alleged victims, physical

1  contact, meeting, or any physical abuse, other than what
2  occurred over the internet?
3            MS. SHOEMAKER:  The only evidence that we have at
4  this point, that I'm aware of, is that when they executed the
5  search warrant, they asked the defendant if he would be willing
6  to take a polygraph, and he said that he would.  And at some
7  point during that process -- I don't know if it was in the
8  interview leading up to the polygraph or if it was specific
9  questions that were asked -- he said that the only contact,
10 sexual contact, that he had had with a minor in the last ten
11 years was an incident where he said someone I believe
12 approximately 12 years old rubbed up against him in a cafeteria
13 and he was sexually aroused by that; but he also, I'm told,
14 failed the polygraph exam.
15      So we are very concerned.  He has been working with
16 children in schools for years through after-school programs and
17 through various organizations.  And as the Court can see from
18 the pretrial services report, he has been moving around a lot.
19 And we are very concerned that he may have had hands-on contact
20 with minors, and we're continuing to investigate that.  But
21 it's going to take, you know, some time for us, first of all,
22 to do the forensic exam and try to identify who all these
23 different victims are and find out whether there has been any
24 hands-on contact.
25      But -- so that's very concerning.

1     But even beyond that, even without the hands-on, it's been
2  prolific conduct that he's engaged in for years.  And he
3  admitted to the officers at the execution of the search warrant
4  that he's been viewing child pornography since he was 12 years
5  old himself.  And so he talked about how they would find
6  evidence of child pornography on his devices and that he had
7  been using his computer, his cell phone, and the flash drive to
8  receive and to send child pornography in addition to causing
9  all of these minors to engage in production of child
10 pornography.
11    And he also admitted that some of the images that -- or
12 videos that he got other children to produce as -- in this
13 complaint, that he would then take those images and send those
14 images to other minors to get them to produce child
15 pornography.
16    So I am so concerned that if he is released that he may
17 have access to the internet, whether he goes out and gets a
18 burner phone or whether he was released and allowed to stay at
19 his parents' house and his parents are asleep or they're not
20 home or they're in the shower where he could have access to
21 their computer or their phones, any time he's allowed to leave
22 the residence, whether he's looking for employment or whether
23 he is traveling back to this district for court appearances, we
24 have no way of reasonably assuring that he is not going to have
25 access to the internet where he could access children through

1  the internet, whether he's accessing child pornography that
2  he's viewing that has already been produced or whether he's
3  having contact with minor victims.
4        It's just with the history that has gone on in this case
5  that we can see from the complaint and the evidence that we've
6  seen so far, including his admissions and those -- the limited
7  amount of review that we've had so far of just that one screen
8  name and musical.ly and what they've done so far from the
9  devices that were seized from his house, I just don't think
10 there's any way to reasonably assure the Court that this
11 defendant is not going to have access to children either over
12 the internet or in person and that the risk -- the nature of
13 that harm is so great that he should not be released for that
14 reason.
15       I also think that he is a risk of nonappearance.  And in
16 addition to the rebuttable presumption, this charge does have a
17 mandatory minimum of 15 years in prison if convicted.  And as
18 the Court can see from the complaint and from what you've heard
19 so far, the weight of the evidence against the defendant is
20 very strong.  So he is going to go to prison for at least 15
21 years, and if we find evidence of a hands-on offense where he
22 may have crossed state lines and had contact with a minor under
23 the age of 12, where he could be facing much more serious
24 penalties.
25       There are many factors to consider under Section 3142(e)

1   in addition to the rebuttable presumption.  As the Court is
2   aware, when pretrial makes their recommendation, they are not
3   considering the rebuttable presumption that applies that the
4   Court has to take into account.
5        They also aren't really considering the facts that are in
6   the complaint because they're relying on the presumption of
7   innocence.  But the Court, under 3142, is required to consider
8   the nature and circumstances of the offenses that are charged,
9   including whether or not it involves a crime of violence or an
10  offense involving a minor victim, as here, and the weight of
11  the evidence.
12       In addition, the Court is supposed to consider the nature
13  and the seriousness of the danger to any person or the
14  community that it would pose by his release.  Those are
15  additional factors that pretrial is not taking into account
16  when they're making their recommendation.
17       In addition to that, we recognize he doesn't have any
18  other criminal record at this time; but by his own admissions,
19  he's been engaged in criminal conduct for years.  This is not
20  an isolated event or abhorrent behavior that he just did on one
21  occasion.
22       So I think that also goes to his character which is
23  another thing that the Court is supposed to take into account.
24       In addition, although he has had a relationship with a
25  woman for 11 years, it's the government's impression, from her

1  statements to the FBI and from the pretrial services report,
2  that she does not intend to maintain this relationship and does
3  not wish for the defendant to be released to their home.
4       So their financial circumstances are also going to be very
5  different as the -- to the defendant.  There's no way that if
6  he were released that he would be able to have his -- his job
7  that he has.  He would not be allowed to work around any
8  children.  So he wouldn't have this employment.  He wouldn't
9  have the other financial assistance of the person who he's been
10 in this relationship with all these years.
11      And his ties to the community, well, now they're --
12 they're not what they were.  If he doesn't have this
13 relationship and he's not living in the home, he doesn't have
14 his employment, and as you can see from the pretrial services
15 report, he's moved around a lot over the last number of years.
16      So I think when you take into account the rebuttable
17 presumption -- but even setting that aside, all of these other
18 facts, that the risk of danger to the community is too great
19 and that there is a serious risk of nonappearance by a person
20 who's never been to prison before is facing a mandatory minimum
21 of 15 years and the likelihood that he is going to be convicted
22 and go to prison, that gives him a great incentive to flee.
23      So based on all of those circumstances, unless the Court
24 has any other questions for me, I believe that he is a danger
25 to the community, as the presumption would suggest, and that he

1    also poses a risk of nonappearance and that he should be
2    detained, that no conditions of release are reasonably going to
3    assure the safety of the community, particularly minors, not
4    just in this immediate community, but anywhere he is.
5         THE COURT:  Thank you.
6         Having not made the decision, I want to hear from
7    Mr. McBreen.
8         I also understand that should I decide to release him on
9    conditions, you want me to stay that release so you can appeal
10   that decision to the --
11        MS. SHOEMAKER:  Yes, Your Honor.
12        THE COURT:  We don't have an assigned judge.  Just
13   that day, based on whoever is on duty, just walk back in and
14   they'll take care of that.
15        MS. SHOEMAKER:  Yes, Your Honor.  Thank you.
16        THE COURT:  Mr. McBreen, do you want to be heard on
17   this question?
18        MR. MCBREEN:  Thank you, Your Honor.  There are --
19   many of the factors that the Court should be considering are in
20   the pretrial report, the pretrial release report, so I will try
21   not to double up on those, but I do want to make a few points
22   clear.
23        As far as fleeing goes, Mr. Ramon has really no ability to
24   flee and nowhere to flee to.  He's a United States citizen.  He
25   was born in California.  His parents actually currently live in

1  the same apartment they have for the last 38 years.  And one of
2  the alternatives we're going to ask the Court is to
3  conditionally release him to be in the custody of his parents
4  in Pasadena, California.
5         We would first, though, request that he be released on
6  conditional release to live at his own home where he would be
7  the only occupant in that home.  We do believe that and are
8  able to overcome the rebuttable presumption that he will appear
9  for court and that the community will be safe if he is
10 released.
11        I think there are more than adequate conditions that are
12 listed out in this pretrial report, specifically GPS
13 monitoring, the contact with minor children, and conditions
14 regarding internet usage and phone usage and general internet
15 connection.
16        Mr. Ramon moved to Oregon in 2015, but his moving around
17 is not really all that out of character for someone at his
18 point in life.  Him and his girlfriend have, a few years ago,
19 graduated college.  I believe his significant other finished a
20 master's program, and they simply were both looking for jobs
21 around the area and both ended up finding something here in
22 Oregon, which is, I -- I guess, a natural part of someone who
23 is going through that -- that point of life.
24        Mr. Ramon has no mental health issues, no domestic
25 violence, no arrest ever, no crimes of violence on his record

1   or that are accused right now.  I know the Court is already
2   aware of it, but there is no in-person abuse alleged in this
3   case.
4       I believe if Mr. Ramon were asked to testify under oath,
5   he would testify that there was never any in-person abuse
6   involved and doesn't believe any of those accusations will be
7   coming.
8       I just want to make clear that, you know, I'm not able to
9   comment as much as the government is as to the weight of the
10  evidence and the nature and circumstances given, that I haven't
11  seen as much as they have, but as to his character, this is
12  someone who graduated -- he was accepted to -- accepted to
13  Cornell University.  He ended up choosing to go to
14  Pomona College.  It's closer to home.  He has a very, very
15  close relationship with his parents.  His brother lives in
16  Washington -- lives and works in Washington, D.C. and works --
17  either has or currently does work for the government.
18      He had been with his significant other for about 11 years,
19  and he does -- he does own his home here, and he does have a
20  place to stay.  He's employable, to the extent he does no
21  longer have his job, which is something we believe is the case.
22  He is more than willing to search for and find work and be
23  employed while this case is pending.
24      I believe that's all, Your Honor.  Again, if the Court has
25  any questions, I would be happy to answer them.  But Mr. Ramon

1   will appear for court either on his own or with the assistance
2   of his family who will get him here.
3            I want to make clear that they are here from Pasadena
4   today, and so they do want to be sure to let the Court know
5   that they can have him here for every appearance.
6            And I have nothing further.  Thank you, Your Honor.
7                 THE COURT:  Thank you.
8            Anything further, Ms. Shoemaker?
9                 MS. SHOEMAKER:  I will just respond real briefly,
10  Your Honor.  First of all, I just want to note for the record
11  that under 3156, Section 3156 to Title 18, that this crime is
12  also considered a crime of violence, not just a crime involving
13  an offense against a minor, and I don't think the concern about
14  the defendant's access and ability to access the internet
15  through phones or computers, in any circumstance, particularly
16  if he were living at the residence here in Portland, Oregon,
17  has been addressed.  I just don't think it reasonably can be in
18  this case.
19                THE COURT:  Thank you.
20           I've given this quite a bit of consideration as I prepared
21  for this hearing.  I believe Mr. Ramon has overcome the
22  presumption as to his likelihood of appearance, and I
23  appreciate his parents being here and supporting him.
24  Unfortunately, I don't believe he's overcome the presumption as
25  to his potential danger to the community.  I agree with the

1   comments made by Ms. Shoemaker here.  I think his admissions
2   and the nature of the charge and the evidence supporting the
3   charge contained in the complaint, even without evidence of
4   hands-on contact, but the potential number of victims, the ease
5   with which he could access those victims or create new victims,
6   leads me to detain Mr. Ramon as a danger to the community.
7       I am going to enter an order, Mr. Ramon, detaining you as
8   a danger to the community, committing you to the custody of the
9   Attorney General, placing you in a facility where you can
10  consult with Mr. McBreen and prepare for further proceedings.
11      You should talk to Mr. McBreen because you also have the
12  right to appeal this decision.  It would go to the backup judge
13  or the -- the duty judge this month.
14      Do you know who that is, Gary?
15          DEPUTY COURTROOM CLERK:  Yes.  It's Judge Mosman,
16  Your Honor.
17          THE COURT:  Judge Mosman is the duty judge this
18  month, and if he's not here -- sometimes he travels.  If he's
19  not available, other of the judges would hear the appeal
20  quickly.
21      And so, Mr. McBreen, if you can talk to your client about
22  that.
23      But for my ruling, it will be that you're -- you are to be
24  detained, Mr. Ramon, as a danger to the community.
25      Anything further, Mr. McBreen?

1        MR. MCBREEN:  Nothing further, other than
2   rescheduling the arraignment, Your Honor.
3        THE COURT:  Oh, yeah.  Rescheduling the arraignment.
4   When do you want to have it?
5        MS. SHOEMAKER:  Your Honor, I'm now planning to
6   present to the grand jury on December 5th.  So I guess to allow
7   for time for returns conceivably on the 6th, if the 7th works?
8        THE COURT:  As long as we're done by 12/17, which is
9   30 days, I think we're fine.  So we can do 12/6 or 12/7.
10       Mr. McBreen, do you have a preference?
11       MR. MCBREEN:  Could we -- could we do the 8th?  Is
12  the 8th at all possible?
13       THE COURT:  It's possible for me.  I'm not the duty
14  judge that month, so it's very possible.
15       Ms. Shoemaker?
16       MS. SHOEMAKER:  It's possible for me, Your Honor.  I
17  know the marshals prefer not to do court appearances on
18  Fridays, but I don't know if that is still the case.
19       MR. MCBREEN:  I can do 3:00 p.m. on the 7th.
20       THE COURT:  You know, I'll put it on the calendar for
21  1:30 on the 7th, and I'll leave it to you.
22       Who's next month's duty judge?
23       DEPUTY COURTROOM CLERK:  Judge Acosta, Your Honor.
24       THE COURT:  I'll let you contact Judge Acosta's
25  chambers with Ms. Shoemaker, and if Judge Acosta is inclined to

```
 1  have a separate hearing later in the afternoon at 3:00 or at
 2  the arraignment --
 3          MR. MCBREEN:  I'll get it figured out.
 4          THE COURT:  -- he can do that.  Otherwise, we'll have
 5  it for 1:30 on the 7th.
 6      Anything further?
 7          MR. MCBREEN:  No, Your Honor.
 8          MS. SHOEMAKER:  No Your Honor.  Thank you.
 9          THE COURT:  Thank you.
10                      (Hearing concluded.)
```

```
                        C E R T I F I C A T E

          United States of America v. Juan Carlos Ramon

                           3:17-mj-00188

                         DETENTION HEARING

                         November 21, 2017


     I certify, by signing below, that the foregoing is a
true and correct transcript of the record, taken by
stenographic means, of the FTR-recorded proceedings in the
above-entitled cause.  A transcript without an original
signature, conformed signature, or digitally signed signature
is not certified.


/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
_____
Transcriber/Official Court Reporter Signature Date: 12/6/17
Oregon CSR No. 98-0346        CSR Expiration Date:  9/30/20
```