```
               IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF OREGON

                        PORTLAND DIVISION


UNITED STATES OF AMERICA,       )
                                )
                     Plaintiff, )  Case No. 3:17-cr-00437-JO-1
                                )
              v.                )
                                )  December 7, 2017
JUAN CARLOS RAMON,              )
                                )
                     Defendant. )  Portland, Oregon
_____)




                 ARRAIGNMENT AND FIRST APPEARANCE

                     TRANSCRIPT OF PROCEEDINGS

                BEFORE THE HONORABLE JOHN V. ACOSTA

           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
```

```
 1                         APPEARANCES

 2   FOR THE PLAINTIFF:
                              JANE H. SHOEMAKER
 3                            U.S. Attorney's Office
                              1000 SW Third Avenue
 4                            Suite 600
                              Portland, OR 97204
 5
     FOR THE DEFENDANT:
 6                            JAMES F. HALLEY
                              James F. Halley, P.C.
 7                            735 SW First Avenue
                              Second Floor
 8                            Portland, OR 97204

 9

10

11

12

13

14

15

16   COURT REPORTER:      Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
                          United States District Courthouse
17                        1000 SW Third Avenue, Room 301
                          Portland, OR 97204
18                        (503)326-8191

19

20                              *   *   *

21

22

23

24

25
```

```
 1                  TRANSCRIPT OF PROCEEDINGS
 2                     (December 7, 2017)
 3   (In open court:)
 4           THE COURT:  Mr. Halley, do you need time with
 5   Mr. Ramon before we start?
 6           MR. HALLEY:  No, I don't think so, Your Honor.  I had
 7   a chance to review the indictment with him.  He's read it, and
 8   so we're prepared to proceed on the arraignment.  And then I
 9   would like to ask Your Honor to consider his release.
10           THE COURT:  All right.  We'll take those in order,
11   then.
12           MR. HALLEY:  Thank you.
13      I should mention I do have the report from the 21st.
14   We've reviewed the substance of that as well.
15           THE COURT:  All right.  Thank you.
16      Ms. Shoemaker, go ahead, please.
17           MS. SHOEMAKER:  Thank you, Your Honor.
18      Good afternoon.  The next case on the Court's docket is
19   3:17-cr-00437.  United States v. Juan Carlos Ramon.  I'm
20   Jane Shoemaker for the United States.  The defendant is
21   present, in custody, with his attorney, James Halley.  This
22   matter is on for an arraignment on an indictment that was
23   returned yesterday afternoon charging Mr. Ramon with two counts
24   of production of child pornography in violation of Title 18
25   United States Code Section 2251(a)(1).  There's also a
```

1  forfeiture allegation in the indictment.
2      As I believe the Court is aware, Mr. Ramon initially
3  appeared before Judge Papak on November 17th on a complaint
4  charging him with one count of production of child pornography,
5  and he had a detention hearing in front of Judge Papak on the
6  following Tuesday.  I believe it was November 21st.  And Judge
7  Papak ordered him detained as a danger to the community.
8      I understand Mr. Halley is going to try to reopen that.
9  If the Court wants to take the arraignment first, I do want to
10 be heard both on the matter of reopening it and if the Court is
11 going to reopen that, then on the merits as well.
12          THE COURT:  All right.  We'll take the arraignment
13 first.
14     Mr. Halley?
15          MR. HALLEY:  Good afternoon, Your Honor.  We do have
16 a copy of the indictment.  Mr. Ramon's name is correctly
17 spelled as Juan Carlos Ramon, and we wish to enter a not guilty
18 plea and waive reading of the indictment.
19          THE COURT:  And a denial of the forfeiture
20 allegation?
21          MR. HALLEY:  Denial of the forfeiture allegations as
22 well, Your Honor.
23          THE COURT:  Thank you.
24     The record will show the defendant will proceed as named
25 in the indictment, a not guilty plea on both counts, a denial

of the forfeiture allegation, and a jury trial demand will be entered on his behalf.  You also waive reading of the charges in that document.

This case is Judge Jones' case.  The outside trial date is February 15, 2018.

Ms. Shoemaker, number of days for trial?

MS. SHOEMAKER:  Your Honor, based on the current charges, we'll estimate that trial would last approximately one week.  I have advised Mr. Halley it is likely that we'll supersede the indictment, but the investigation is still continuing.

THE COURT:  All right.  At this time we'll set it for a one-week jury trial before Judge Jones, beginning Tuesday, February 6th, 2018, at 9:00 a.m.  Discovery in 14 days.

All right.  That takes care of the arraignment.

Moving to the issue of detention review, let me make some observations first.  I've read the complaint.  I've read the transcript from both from Ramon's initial appearance and from the detention hearing before Judge Papak.  Judge Papak ruled that Mr. Ramon should be detained as a danger to the community. He did not find that he was a flight risk.  That is the current state of Mr. Ramon's detention.

Our practice in this district is to consider reopening for a review of detention a defendant's in-custody status if there is new information presented that was not available at the time

1  of the initial detention determination.
2          So, Mr. Halley, let's take it one step at a time because
3  Ms. Shoemaker would like to be heard in order with respect to
4  whether we reopen or not, and, if so, what we talk about.
5          Is there new information that was not present when
6  Judge Papak heard the matter that you believe is available to
7  discuss in reviewing Mr. Ramon's current detention status?
8              MR. HALLEY:  Yes, Your Honor.  First, I note that
9  Mr. Ramon's parents are here, Cristobal and Berta Ramon.  They,
10 I believe, were present at the prior hearings.
11             THE COURT:  Yes.
12             MR. HALLEY:  And were interviewed by pretrial.
13             THE COURT:  Yes.
14             MR. HALLEY:  But I don't think the details of the
15 plan we propose today were set forth at that time in a couple
16 of particulars.  One, in regard to computer access, which I
17 know is a concern of the prosecution's, Mr. Ramon has one
18 computer, a mini Mac computer, that he uses for his work as an
19 engineer, and he -- this is different from the appearance on
20 the 21st.  We have a proposal that that not even be in the
21 house; that that go to his workplace and not be in the house so
22 that there is no chance that Juan Carlos Ramon would access it.
23         Second, in regard to access with telephones, we don't
24 anticipate that Juan Carlos would have a telephone, at least
25 not one that could access the internet.  We're not asking for a

1  phone at this time.
2      And in regard to his parents' phones, those now, as of
3  this morning, have been secured.  They went to the ATT -- AT&T
4  store this morning and had them changed, so there are access
5  codes installed.  They can't be accessed by anybody who doesn't
6  know the access code, and they vouch to the Court that they
7  wouldn't allow Juan Carlos Ramon, their son, to have access to
8  those.  That is different information.
9      In addition, I don't believe that a proposal was made that
10 Mr. Juan Carlos Ramon be occupied with employment.  His mother,
11 Berta Ramon, works cleaning houses.  She does that for elderly
12 people.  There are no children in the homes of her clients, and
13 so we propose that Juan Carlos Ramon assist her in that work.
14 That would keep him occupied, generate some income for him, and
15 put him under her supervision on a regular daily basis.
16     In addition, again, not articulated at the prior hearing,
17 we propose that Mr. Ramon, Sr., Cristobal Ramon and Mrs. Ramon
18 vouch to the Court that they will supervise Juan Carlos Ramon
19 on a 24-hour basis.  Again, I don't think that was presented at
20 the prior hearing.  Maybe it was discussed in the pretrial
21 services interview.  I cannot tell.  I don't know.  I wasn't
22 there.  But they certainly would report to the Court any
23 violation of pretrial conditions to the pretrial services
24 office if they occurred.
25     These are all efforts on our part to formulate a plan that

1  will assure the safety of the community in two respects.  It
2  will ensure that Juan Carlos Ramon has no contact with minors.
3  No minors living in the house.  He will be in the company of
4  his parents, one or the other, 24 hours a day.  When he goes to
5  work with Mrs. Ramon, he won't be in contact with children.
6  And we offer our assurances that he won't have access to the
7  internet.  He won't have access to a computer.
8         Finally, again, not offered at the prior hearing,
9  mentioned in the hearing was concern about his travel if he
10 were to live in LA.  During those travels, Mr. and Mrs. Ramon
11 commit that one or the other, or both of them, would accompany
12 him, so he's not a free agent when he's traveling to and from
13 court.  Again, to assure no contact with minors and to assure
14 no access to computers and the internet.
15        These are all in an attempt to address the danger issue
16 that motivated Judge Papak to detain Mr. Ramon.  These are
17 different circumstances.  These are very, very solemn
18 commitments that Mr. Ramon's parents make.
19        I should also note he has -- he has a strong network of
20 friends and family.  His cousin, Claudia Robles, is here,
21 daughter of Berta Ramon, and his friend Jonathan Polvers is
22 here.  I think Mr. Polvers is from the Portland area.  Claudia
23 is from the Los Angeles area.  All of these are our effort to
24 present a program to the Court that will assure the safety of
25 the communities, a much different set of circumstances, much

1  more detailed set of circumstances than was presented on the
2  21st.
3      Of course we would live by any other reasonable
4  conditions.  We have no objection to the commission --
5  conditions that were proposed in the report written by
6  Officer Rios on the 21st.  Under 3241(f), which I think sets
7  the standards that if there is new information that was not
8  known to the movant at the time of the hearing, the Court may
9  reopen the hearing.  I don't feel as though -- I don't believe
10 that Mr. Ramon's counsel thought of these things to propose to
11 the Court.  If he had thought of them at the time, he would
12 have proposed them.  That wasn't done, and that's an indication
13 that they weren't known to counsel and ergo not known to the
14 defendant, not recognized in terms of their importance.
15     So it is appropriate to reopen the question today, and I
16 ask the Court to find that there now are reasonable conditions
17 to assure his appearance.
18     I would like to also be heard on -- on that reasonable
19 assurance, but that's the reasons why it should be reopened
20 today.
21          THE COURT:  All right.  Thank you.
22     Ms. Shoemaker, hang on just a minute, please.
23     All right.  Ms. Shoemaker, on the issue of whether we
24 reopen the issue of detention or not, go ahead.
25          MS. SHOEMAKER:  Your Honor, I don't believe that

1  there have been any material changes in any of the facts other
2  than that the grand jury has now returned an indictment
3  charging Mr. Ramon with two counts of production of child
4  pornography.
5       I think the basic gist of what the defense is offering the
6  Court as a proposed release plan for Mr. Ramon was essentially
7  the same thing that was proposed to Judge Papak that he
8  rejected.  They offered that the defendant could live with his
9  parents and that his parents would be third-party custodians.
10 My recollection is that they said the computer could be
11 password protected and that they would keep their phones in
12 their possession at all times.  So I don't think that other
13 than saying that, well, he can go work with his mother and
14 enter homes of strangers, where, presumably, even if they don't
15 have children present, they're likely going to have other
16 devices that would provide an opportunity for access to the
17 internet -- so I don't think that anything material has changed
18 here that warrants reopening the detention hearing at this
19 time.
20      And if Mr. Halley wants to appeal that to Judge Jones,
21 then he's entitled to do that under 3145, but I don't think
22 that it's something we should be reopening at this time.
23            THE COURT:  All right.  Thank you.
24      All right.  Before I determine whether we will actually
25 reopen it, I'm just going to hear what the parties have to say

1  about the merits of the plan, and then I'll rule on both so
2  that you have a full record in the event that either of you
3  want to appeal it to Judge Jones.
4      Mr. Halley, I'll start with you because this is your
5  request.  I'll give you my observations first.  This is a
6  presumption crime, which, as you know, means the burden is
7  flipped from the prosecution to the defense to establish that
8  the individual can be released with adequate safeguards to
9  protect the safety of the community.  I have serious concerns
10 in this case.  The case involves not simply the possession of
11 child pornography.  We've seen many of those cases every month
12 that come through on the 1:30 docket.
13     The conduct is always, in those cases, limited to the
14 possession of images and perhaps the exchanging of them.
15 That's not what happened here.  The allegation in the
16 complaint, which preceded the indictment, is that the defendant
17 got onto the internet to make contact with minor-aged females,
18 and, more specifically, females in the age range of middle
19 school and younger, and, however we characterized it,
20 manipulated or maneuvered them into performing sex acts while
21 recording them and sending them to him.
22     He did this by pretending that he also was a middle
23 school-aged girl.  And particularly troubling is the manner in
24 which technologically he is alleged to have made these efforts.
25     He used an internet service provider that allowed the

1  customer to anonymize himself by making available rotating
2  internet protocol addresses or numerical IDs through a
3  provider, my recollection is, from the complaint allegations,
4  in Europe, which would make it more difficult to identify him
5  or to locate his location.
6      He used, in addition to the -- the name or the pseudonym
7  he used in this particular case, he is alleged to have used
8  others, based on the information that the investigating agents
9  provided and based on the investigating agent's review of the
10 material stored on the electronic media that they took from the
11 residence or from his possession, there is a current estimate
12 that there could be as many as 50 or more victims in addition
13 to those in this case.
14     This is not an isolated instance.  It's certainly not a
15 set of allegations that suggests any of this was a mistake,
16 and, in this particular case, not only is he alleged to have
17 produced child pornography, but he took efforts to safeguard
18 himself so he would not be identified.
19     So my concern is we have an individual here who, according
20 to the allegations, thinks through a plan to achieve two goals:
21 To obtain child pornography and record it and to protect his
22 identity to remain anonymous while doing so.
23     I will tell you at the outset, it is a nonstarter for me
24 to send him to the Los Angeles area.  He is -- I'm not going to
25 do that.  I will not send him out of district and particularly

1  to Los Angeles.  I recognize that his parents live there and
2  other family members do.  I do not want him outside the
3  jurisdiction of this district.  If I were to release him, I
4  would want him supervised by a pretrial office that is invested
5  in the case because it resides in the charging district.
6       I don't know the facilities for the probation office that
7  would supervise him down there, what their interests would be,
8  how diligent and conscientious they would be, but I know all of
9  those things with respect to the pretrial services officers
10 here, and I have much more confidence, because I know them,
11 that if he were released there would be appropriate supervision
12 and follow-up in a case of this nature.
13      I'm not sure, however, that he should be released at all
14 no matter where he might end up.  Assuming for purposes of our
15 discussion that your plan, as you articulated it, is a plan
16 different from that presented to Judge Papak at the initial
17 detention hearing, it still gives me concern that this
18 individual would be released into the community.  Even assuming
19 his parents lived locally and he were to reside with them,
20 which we know won't happen if he were released into the
21 District of Oregon, this is different from a case involving
22 felon in possession of a firearm or someone who is alleged to
23 have engaged in drug trafficking.  We can put a GPS on them and
24 prevent them from going certain places.  We can make sure they
25 don't have a gun in the house or possess one or control one.

1   Technology is much more fluid and intangible than those things.
2   And even if his work computer were to stay at his place of
3   employment, it is very difficult to ensure that he does not
4   access another device, regardless of whose device it might be
5   or where it might be located, including at public librairies,
6   walk-up terminals at his place of employment, unattended
7   terminals of co-workers, friends.  It's difficult to monitor
8   that.
9        And, again, I want to emphasize the nature of the
10  allegations here.  It's not simply the possession of images.
11  He was alleged to be producing them, and, according to the
12  investigating agents, he told them that he had been doing this
13  for several years.  That's very troubling to me when I think
14  about a request to release him.
15       I'm happy to hear what you have to say about any of the
16  points that I've made, but I won't send him to another
17  district.  If he is released, he must stay here.
18            MR. HALLEY:  If I may, Your Honor?
19            THE COURT:  Go ahead.
20            MR. HALLEY:  First, I'm a little bit concerned about
21  whether or not I made myself clear, and I don't want to belabor
22  going to LA.  I wasn't proposing that Juan Carlos Ramon's
23  computer be placed somewhere and he only have access to it at
24  work.  It is his father's computer I was proposing would be
25  removed from the home and would be in the father's workplace

1  and never in the presence of Juan Carlos Ramon.
2          THE COURT:  Thank you.
3          MR. HALLEY:  So I -- I wanted to clear that up.
4          THE COURT:  Thank you.
5          MR. HALLEY:  From a practical point of view, I -- I
6  propose that he be with his parents because in that arrangement
7  I can offer the Court 24-hour supervision by one parent or
8  another.  I hope that if I can fashion a similar plan for him
9  here in Portland the Court would hear me on that.  I can't
10 present it here today.  I'm not prepared to do so.  But I would
11 like to look into it.
12         In regard to the allegations, we certainly acknowledge
13 that they're very serious allegations.  But at this stage, it's
14 inappropriate to give too much weight to those allegations.
15 That tends to presume guilt rather than innocence and violate
16 the Eighth Amendment prohibition on excessive bail.
17         I'll just cite *United States v. Cardenas* which is at
18 784 F.2d 937 where the Court said the weight of the evidence is
19 the least important of the various factors.  However, the
20 statute neither requires nor permits the pretrial determination
21 that the person is guilty.
22         And reading the transcript of the prior hearing, my
23 impression was that the prosecution was relying heavily on the
24 weight of their evidence inappropriately.
25         I would like the opportunity to fashion a plan.  If the

1  Court feels that Los Angeles is a nonstarter, fashion a plan
2  that would ensure that Mr. Juan Carlos Ramon is under adequate
3  supervision here.
4       I can't offer that here today.  I do urge the Court to
5  find that he is releasable and that the plan proposed for Los
6  Angeles is an appropriate plan.  I don't want to waive that
7  argument.  We certainly recognize the seriousness of the
8  allegations and we hope to address them.
9            THE COURT:  In determining whether a defendant should
10 be released pretrial, in the great number of cases in which we
11 have that discussion, at some point we talk about the nature of
12 the charges and the evidence supporting those charges.  That
13 discussion comes up in different contexts.  Sometimes it comes
14 up because the government uses that to support its argument of
15 flight risk because if convicted the defendant is facing a
16 significant amount of prison time.  Sometime the government
17 uses it to support its argument about danger to the community
18 because of the nature of the allegations.  Violent crimes, for
19 example.
20      The government has pointed out in its prior arguments to
21 Judge Papak that this qualifies as a crime of violence;
22 although, it is probably not the typical crime of violence that
23 we often see on the 1:30 daily docket.
24      It is a presumption case, and I appreciate that there are
25 factors that weigh in Mr. Ramon's favor.  He seems to not have

1  a criminal history.  He seems to have a relatively steady
2  employment history.  He is moved around quite a bit, but it has
3  either been for education or employment purposes.  And there
4  are other factors that are to his favor.  I acknowledge that.
5  But I'm concerned about the danger to the community that is
6  present if he is released.
7      Out of district is not an option.  In district, if I were
8  to release him, would be required.  Based on the allegations
9  and the charges, there also are concerns about his ability to
10 work because, as you know, a common condition in these cases is
11 that an individual may not have contact with anyone under the
12 age of 18.
13     That seems to be precisely the kind of work he had been
14 doing.  In other words, it brought him into contact with
15 children as well as adults.  So that would be a concern as well
16 as, frankly, treatment options.
17     But right now, although your plan is more detailed, it is
18 not materially different from that presented to Judge Papak by
19 Mr. Ramon's previous counsel.
20     Even if I were to reopen the detention issue -- and I'm
21 not sure that I am because I do not believe your plan is
22 materially different from the previous plan, but even if I were
23 to consider it, the plan is not, in the Court's view, adequate
24 to protect the community's safety.
25     I'm going to continue to hold Mr. Ramon here.  That

1  ruling, Mr. Halley, is without prejudice.  If you can come up
2  with additional safeguards and a different plan, certainly
3  during the month of December, which is my duty month, I'll
4  consider it.
5      Ms. Shoemaker, if you believe that if the plan is
6  presented in a different month it should be brought back to me,
7  you may do that, even if I'm not on calendar, or you can
8  present to the duty magistrate judge at the time.
9          MS. SHOEMAKER:  Thank you, Your Honor.
10          THE COURT:  All right.  Thank you.
11          MR. HALLEY:  Thank you very much, Your Honor.
12          MS. SHOEMAKER:  Thank you, Your Honor.
13          DEPUTY COURTROOM CLERK:  Court is adjourned.
14                  (Hearing concluded.)

1                         C E R T I F I C A T E

2

3            United States of America v. Juan Carlos Ramon

4                           3:17-cr-00437-JO-1

5                              ARRAIGNMENT

6                           December 7, 2017

7

8            I certify, by signing below, that the foregoing is a
9    true and correct transcript of the record, taken by
10   stenographic means, of the proceedings in the above-entitled
11   cause.  A transcript without an original signature, conformed
12   signature, or digitally signed signature is not certified.

13

14   /s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
     _____
15
     Official Court Reporter        Signature Date: 2/2/18
16   Oregon CSR No. 98-0346         CSR Expiration Date:  9/30/20